## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-01652

GREGORY TUCKER,

      Plaintiff,

v.

FAITH BIBLE CHAPEL INTERNATIONAL, a Colorado non-profit corporation,
d/b/a FAITH CHRISTIAN ACADEMY INC.,
FAITH BIBLE CHAPEL INTERNATIONAL, INC.,
FAITH CHRISTIAN ACADEMY,
FAITH CHRISTIAN HIGH SCHOOL,
DOUGLAS NEWCOMB,
ANDREW HASZ, and
MICHAEL COOK.

      Defendants.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff, Gregory Tucker, by and through his counsel, Peter G. Friesen, Elisabeth L. Owen and Elizabeth A. Walker of LEVIN SITCOFF PC, hereby submits his Complaint against Defendants, Faith Bible Chapel International, a Colorado non-profit corporation d/b/a Faith Christian Academy Inc., Faith Bible Chapel International Inc., Faith Christian Academy, Faith Christian High School, Douglas Newcomb, Andrew Hasz, and Michael Cook, states and alleges as follows:

### INTRODUCTION

1.    This action involves a series of events that resulted in the termination of Plaintiff Gregory Tucker ("Plaintiff") as teacher and Dean at Faith Christian High School, and employee of Faith Christian Academy and Faith Bible Chapel.

2.      The termination was actuated by Faith Christian and was motivated by Plaintiff's opposition to racial discrimination and harassment. This discrimination was directed against him as the father of a black daughter, and other racial minorities who attended the school. In order to oppose this discrimination, he organized a symposium to discuss racist behavior within the school with the intention of eliminating it. This symposium shall hereafter be referred to as the "Chapel."

3.      Plaintiff had been given authority to organize the Chapel and was at first praised for it by the administration. However, after the Chapel, students and parents who were guilty of the most racially incendiary behavior were offended by the implied message that they were guilty of racism and called for Plaintiff's termination.  Defendant Faith Christian succumbed to the pressure and fired Plaintiff on February 26, 2018.

4.      In the process of terminating Plaintiff, Faith Christian attempted to shield itself from the outrage expressed among parents who supported Plaintiff by making defamatory remarks about Plaintiff. They told school faculty that Plaintiff had been guilty of gross insubordination and that he had voluntarily resigned in the presence of those accusations.

## JURISDICTION AND VENUE

5.      This action is brought pursuant to Title VII of the Civil Rights Act of 1964, which prohibits discrimination against an employee by virtue of his race, or for opposition to racial harassment directed against him or another employee. It also protects employees who oppose racial discrimination or harassment against a person with whom he has a significant business or personal relationship.

6.      This action is also brought under Title VI of the same act prohibiting racial discrimination, racial harassment, and retaliation against those opposing racial discrimination and

harassment in educational institutions that receive substantial federal funding and assistance. Plaintiff is informed and believes that Faith Christian Academy receives substantial federal assistance in the form of educational grants, loans, scholarships and tax exemptions from the federal government.

7.      Jurisdiction of this Court is conferred pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has supplemental jurisdiction over those claims of Plaintiff based on state laws, pursuant to 28 U.S.C. § 1367.

8.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because one or more of the Defendants reside within this Court's judicial district and a substantial part of the events or omissions giving rise to the claims occurred within the judicial district.

## PARTIES

9.      At the time the wrongful acts were committed against Plaintiff, he was a permanent resident of the State of Colorado.

10.      On May 25, 2018, an administrative complaint was submitted to Colorado Civil Rights Division and the Equal Employment Opportunity Commission ("EEOC"). Plaintiff received his right to sue notice from the EEOC on April 30, 2019.

11.      At all times applicable herein, Defendant Faith Bible Chapel International a Colorado non-profit corporation doing business as Faith Christian Academy Inc. is a religious organization incorporated within the laws of the State of Colorado.

12.      At all times applicable herein, Defendant Faith Bible Chapel International Inc. is a religious organization incorporated within the laws of the State of Colorado.

13.     At all times applicable herein, Defendants Faith Christian Academy and Faith Christian High School are educational institutions owned and operated by Faith Bible Chapel International, Inc., and conducted their business affairs in Arvada, Colorado.

14.     The foregoing Defendant entities collectively referred to as "Faith Christian" terminated Plaintiff's employment as a teacher and Dean at Faith Christian High School in Arvada, Colorado.

15.     At all times applicable herein, Defendant Douglas Newcomb ("Newcomb") was a Board Member and the Chief Operating Officer of Faith Bible Chapel Academy.

16.     At all times applicable herein, Defendant Andrew Hasz ("Hasz") was Superintendent of Faith Christian Academy.

17.     At all times applicable herein, Defendant Michael Cook ("Cook") was Principal of Faith Christian High School.

18.     At all times applicable herein, Defendants Newcomb, Hasz and Cook are permanent residents of Denver, Colorado, and at all times while committing the wrongful acts enumerated below, were employed as managing agents of Faith Christian and acting in the course and scope of their employment.

## FACTUAL BACKGROUND

19.     Plaintiff began his employment at Faith Christian in 2000 as a high school teacher of Biology, Chemistry, and Physics.

20.     While employed at Faith Christian he ranked among the most accomplished teachers in the school and consistently received outstanding evaluations. Every year he was praised by the administration for his excellence in the classroom and the positive impact he had on

students' lives. Further, he was beloved by his fellow teachers and the student body. In 2014, he was offered the position of Dean of Students, and in the fall of 2017, he was given the responsibility of organizing the weekly chapel meetings, one that had always been reserved for the school Principal, but was assigned to him as a token of trust and respect for the excellent work he had been doing.

21.    In 2011, shortly after returning from doing humanitarian work in the Dominican Republic, he and his wife adopted their daughter who is ethnically a Haitian and of African descent. His relationship as the father of a black daughter was communicated to Faith Christian managers and was well known throughout the school. As a Christian, he had spoken without inhibition that racism is morally wrong and anti-Christian. During the 2016 elections, he was vocal in his opposition to racism on his Facebook page.

22.    In 2016, the Plaintiff became the target of racial harassment, when he was derided by students for being the father of a black daughter and referred to as "nigger father" and "nigger lover." He communicated this racial harassment to those who managed the high school's affairs, including Hasz, who at the time was the Principal of the high school, as well as then-Superintendent Brian Wall.

23.    Plaintiff's complaints about his personal harassment were made along with complaints and opposition to racism directed toward black students, and other racial minorities. This included frequent taunting of African American students with racial slurs such as "nigger" and "slave," taunting of Hispanic students with ethnic slurs, white students dressing in KKK hoods and mock-executing minority students, open class statements promoting neo-Nazism and white supremacy in the presence of students of color, the school's refusal to recognize MLK day or Black

5

History Month, the belittling and bullying of students who raise racial issues, and the circulation of racist commentary on social media among FCA students. A disgusting example of the type of literature in circulation at the school was the following Instagram post by a student.



24.    While communicating his opposition to racial harassment of this nature, Plaintiff repeatedly emphasized that not only was this kind of behavior offensive and unacceptable in a Christian (or any other) educational institution, but that he was personally offended by racism of this nature because of his black daughter. The environment was not only hostile and offensive to other black students but was hostile to him personally.

25.    In a constructive effort to change this hostile environment, he suggested to Defendant Cook, his superior, that a symposium of invited speakers be organized to discuss the issue of racism at the school in a Chapel meeting. As mentioned earlier, in 2017, Plaintiff had been assigned the position of Chapel director.  Cook agreed to this event and Plaintiff organized it, inviting speakers who had experience with race issues and dealing with racism in schools.

26.     The Chapel was held on January 12, 2018. After the Chapel Defendants Hasz and Cook praised the Chapel and Plaintiff's efforts to organize and present it, stating: "Hi Gregg, I left after Herzog's Q/A—how did everything end? I thought the panel was great! ... Thank you for taking on hard topics that are important for the kids to pray and wrestle with at this time in their lives. I hope you have a wonderful weekend and know that you are incredibly valued at FCHS!"

27.     Notwithstanding these positive sentiments first expressed by Faith Christian management, the message of the Chapel angered some of students and parents. They did not like the fact that they were being challenged for their racist behavior and did not recognize how this racism was harming minority students at the school. They were, in fact, so angry that they were directing false and vitriolic statements at Plaintiff and asked the school to fire him.

28.     In response to these parental complaints, Defendant Hasz removed Plaintiff from his position as Chapel director and banned him from speaking in front of students at Chapel. Hasz and Cook also sent a letter to all the parents of students attending the high school, apologizing for the Chapel and the message that racism was a problem at the school, blaming Plaintiff for the supposedly flawed message, and announcing that Plaintiff's role in the Chapel would be investigated. This was Faith Christian's first in a sequence of acts of retaliation leading to his termination.

29.     Plaintiff opposed this effort to eviscerate the significance of the Chapel, offend the minority students and their families, and lay public blame on him for making the Chapel unpalatable to racist students and parents. He opposed the letter in private before the letter was sent out. After several more public and private statements reiterating his apology for the Chapel and blaming the Plaintiff, Plaintiff responded to a small group of parents who were asking him

about where he was at with the reaction to the Chapel and in an effort to reinforce the significance and importance of the Chapel. Plaintiff provided Hasz and Cook a copy of the response and Hasz and Cook praised it.

30.     Defendants Faith Christian, Newcomb, Hasz, and Cook responded to the interaction with parents by informing Plaintiff that his teaching contract would not be renewed in the upcoming year. This was the second act of retaliation leading toward Plaintiff's termination, taken against him because of his role in organizing the Chapel and resisting Defendants' efforts to minimize the significance of it.

31.     In response to Faith Christian not renewing Plaintiff's contract, a much larger group of parents who were outraged by Faith Christian's efforts to minimize the problem of racism at the high school, circulated a petition opposing racism at the school, as well as the demotion or termination of Plaintiff. This was signed by almost 500 students, parents, alumni, and community members, many of whom shared stories of racism they faced at the school and the administration's lack of response to it.

32.     The third act of retaliation followed after Plaintiff communicated to other faculty members that he was going to be fired at the end of the school year.  This, along with the growing public opposition to Faith Christian's appeasement of racially bigoted parents and the punishment of the one they blamed (Plaintiff), changed the timeline. At that point Faith Christian, Newcomb, Hasz, and Cook decided that they could not wait until the end of the school year. They fired Plaintiff on February 26, 2019.

33.     In the meeting in which Plaintiff was being told of his termination, Hasz openly admitted that he was being terminated because of Plaintiff's role in organizing the Chapel, and of

reaction of some of the parents to it. In that meeting, Plaintiff was not accused of insubordination. Nor was he accused of insubordination at any point.

34.     Immediately following the termination of Plaintiff's employment, Hasz sent an email to the parents of all 1,000+ students at Faith Christian Academy and falsely claimed Plaintiff had mutually agreed to resign and that issues of racism had nothing to do with the decision. The next day he informed the faculty that Plaintiff had been guilty of and formally accused of insubordination, and that Plaintiff resigned his position. Hasz further informed the faculty that any person who signed the petition in opposition to racism and retaliation against Plaintiff were likewise guilty of insubordination.

35.     In private meetings with students, parents, teachers, and community members, as well as public statements to the news media, Hasz stated that issues of racism and the Chapel had nothing to do with Plaintiff's termination, and that Plaintiff had voluntarily resigned for other reasons. These false statements implied that Plaintiff had either resigned due to his consciousness of guilt for acting inappropriately, or that he was forced to resign as part of a termination for cause. The announcement thereby led to significant doubt among the students at Faith Christian and their parents to the effect that Plaintiff had committed an act or acts justifying termination for cause, when no such cause existed. The stigma associated with Plaintiff's termination and the announced reasons for it were of the sort that would typically and naturally affect his ability to pursue his occupation.

**FIRST CLAIM FOR RELIEF**
**(Retaliation in violation of 42 U.S.C. Section 2000e-3(a)**
**against Defendants Faith Christian, Newcomb, Hasz and Cook)**

36.     Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

37.     Plaintiff engaged in protected activity under 42 U.S.C. Section 2000e(a) ("Title VII") by opposing a racially hostile environment. That environment directly engaged his race – as the white father to a black daughter. Racial insults directed against him personally, and additionally, other racially hostile acts and insults directed at others, created a racially intimidating environment that interfered with the effective discharge of his duties and responsibilities as high school teacher and Dean of Students. Plaintiff communicated his discomfort with this hostile work environment and organized the Chapel to reverse the hostility.

38.     Notwithstanding the effect of this environment on him personally, he fell within the zone of interest of those protected under Title VII, because he was a Faith Christian employee subject to Title VII protection, and the teacher and Dean of Students subject to racial harassment whose welfare fell within his employment responsibilities. Opposing racial harassment was important to him as an employee victim of such harassments and protecting students from racial harassment was an important aspect of his job.

39.     Upon the realization that Faith Christian had become a racially hostile environment, he opposed it, first by informing his direct supervisors, who acknowledged and admitted that the problem exists, and then by organizing the Chapel. After Faith Christian tried to nullify the controversy raised by the Chapel, he made efforts to restore the significance of the Chapel by responding to the parenting community which, like himself, were offended by growing racial

harassment at the school. He gave advance notice of intention to make this communication to his superiors, and they not only allowed it, but praised his efforts.

40.    As a direct response to Plaintiff's opposition to racial harassment, Faith Christian, Newcomb, Hasz, and Cook retaliated against Plaintiff by terminating his employment. Plaintiff's termination occurred first by removing him from his position as Chapel director, then by his removal from the position as Dean of Students, then by giving him notice that he would be fired at the end of the year, and finally by terminating his employment.

41.    Plaintiff's opposition to racial harassment was a motivating factor in his termination, and he would not have been terminated but for his opposition to racial harassment.

42.    As a result of a course of retaliatory conduct and Plaintiff's ultimate termination, he was damaged. His damages include emotional distress, loss of emotional value of his work, and loss of salary and other employment benefits, the value of which shall be proven at trial.

43.    The retaliatory conduct was wanton, fraudulent and malicious, done with an intent to harm Plaintiff, while making public statements about him known by Defendants to be false. Defendants conduct thereby entitle Plaintiff to an award of exemplary damages.

**SECOND CLAIM FOR RELIEF**
**(Retaliation in violation of 42 U.S.C. 2000d ("Title VI")**
**against Defendants Faith Christian, Newcomb, Hasz and Cook)**

44.    Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

45.    Faith Christian is subject to the protections of Title VI because it owns and operates and educational institution, that institution receives (through information and belief) federal support in the form of financial assistance, scholarship grants and subsidies, and tax exemptions,

11

and because the retaliatory acts that are subject to this Complaint concern discrimination in Faith Christian's educational activities.

46.     In addition to protections Plaintiff receives as employee of Faith Christian, his opposition to discriminatory practices—notwithstanding his employment status—constitute protected activity under 42 U.S.C. 2000d.

47.     Plaintiff's opposition to racial harassment was a motivating factor in his termination, and he would not have been terminated but for his opposition to racial harassment.

48.     As a result of a course of retaliatory conduct and Plaintiff's ultimate termination he was damaged. His damages include emotional distress, loss of emotional value of his work, and loss of salary and other employment benefits, the value of which shall be proven at trial.

49.     The retaliatory conduct was wanton, fraudulent and malicious, done with an intent to harm Plaintiff, while making public statements about him known by Defendants to be false. Defendants conduct thereby entitle Plaintiff to an award of exemplary damages.

### THIRD CLAIM FOR RELIEF
### (Defamation against Defendants Faith Christian, Newcomb, Hasz and Cook)

50.     Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

51.     Defendants Faith Christian, Newcomb, Hasz, and Cook either directly or by and through agents with whom they acted in concert or otherwise acting upon their direction made the following defamatory statements about Plaintiff: Plaintiff had been terminated for insubordination and Plaintiff resigned his employment for reasons having nothing to do with the Chapel or his opposition to racial harassment.

52.     The above listed statements were defamatory *per se* because they tended to harm Plaintiff in the pursuit of his occupation, and implied that he acted against fair and clearly established standards of conduct at his employment, that his conduct was sufficiently egregious as to warrant termination without notice, that he acquiesced voluntarily to termination in the face of allegations made against him, and that he voluntarily abandoned the promotion of principles he was, as teacher and Dean of Students, morally and legally obligated to protect.

53.     The statements made were untrue, and made with reckless disregard of their truth or falsity, with the knowledge that they were false, and with the improper purpose of elevating the status and reputation of Faith Christian, the promotion of a false defense to claims of discrimination, while denigrating Plaintiff in the eyes of his colleagues, the students, the parents of his students, and to the public at large.

54.     As a direct result of these defamatory statements he has suffered pecuniary loss by being constrained in his efforts to find comparable alternative employment.

55.     As a further direct result of these defamatory statements he has suffered a loss of reputation, embarrassment, shame and public scorn, all of which is unmerited.

56.     The retaliatory conduct was wanton, fraudulent and malicious, done with an intent to harm Plaintiff, while making public statements about him known by Defendants to be false. Defendants conduct thereby entitle Plaintiff to an award of exemplary damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against each of the Defendants and award him all relief allowed by law, including but not limited to the following:

(a) All appropriate relief including injunctive relief at law and equity;

(b) Compensatory and consequential damages on all claims allowed by law in an amount determined at trial;

(c) Punitive damages on all claims allowed by law and in an amount to be determined at trial;

(d) Attorneys' fees and the costs associated with this action, including expert witness fees, on all claims allowed by law;

(f) Pre- and post-judgment interest at the appropriate lawful rate; and

(g) Any further relief that this court deems just and proper, and any other relief as allowed by law.

**PLAINTIFF RESPECTFULLY REQUESTS A TRIAL BY JURY OF THE ABOVE STATED CLAIMS.**

Dated this 7th day of June 2019.

Respectfully submitted,

**LEVIN SITCOFF PC**

*s/Peter G. Friesen*
Peter G. Friesen
Elisabeth L. Owen
Elizabeth A. Walker
1512 Larimer Street, Suite 650
Denver, Colorado 80202
Telephone: 303-575-9390
Fax: 303-575-9385
pgf@levinsitcoff.com
elo@levinsitcoff.com
eaw@levinsitcoff.com