IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No: 1:19-cv-01652-RBJ-STV

GREGORY TUCKER

Plaintiff,

v.

FAITH BIBLE CHAPEL INTERNATIONAL, a Colorado non-profit corporation,

Defendant.

## MOTION TO DISMISS

Defendant Faith Bible Chapel International, Inc. ("**Faith Bible**") hereby moves this Court to dismiss Plaintiff's Amended Complaint in its entirety.

**1.     INTRODUCTION**

For well over a decade, Plaintiff Gregory Tucker served as a teacher, Dean of Students, and Chaplain at Faith Christian Academy, a religious school operated by Faith Bible. The central event in Mr. Tucker's Amended Complaint is a chapel service that he, as Chaplain, organized on January 12, 2018, which focused on issues of race and faith. Throughout the Amended Complaint, he refers to this event as "the Race and Faith Chapel." *See* ECF 13 at ¶¶ 64, 65, 66, 67, 68, 69, 71-80, 83, 84, 85, 89, 90, 97, 103, 109, 117, 124, 128. His claims are directly tied to the Race and Faith Chapel and how Faith Bible dealt with the issues that arose from that event.

As Faith Bible's Chaplain, Mr. Tucker created and directed the program for the Race and Faith Chapel. His admitted purpose in programming the Race and Faith Chapel was to share Faith Bible's religious message as it pertains to racial diversity and sensitivity. As Mr. Tucker explained: "The Bible repeatedly explains the kingdom of God as made up of a diverse group of

people from every tribe, language, people, and nation (Rev. 9, John 11). My prayer was that this [the Race and Faith Chapel] would be a step toward recognizing and appreciating this beautiful picture." *See infra*.

Naturally, Faith Bible encouraged Mr. Tucker, as Chaplain, to share this Gospel message because celebrating God's diverse Kingdom is integral to Faith Bible's core mission. In fact, the message is embodied on Faith Bible's Home Page:

> Faith Christian Academy admits students of any race, color, national and ethnic origin to all the rights, privileges, programs, and activities generally accorded or made available to its students. FCA does not discriminate on the basis of race, color, national and ethnic origin in administration of educational policies, admissions policies, scholarship and loan programs, athletics, and other school-administered programs.

Faith Christian Academy Home Page, www.fca-schools.org (last visited September 23, 2019).

Faith Bible's Mission Statement further provides:

> By providing a biblically integrated education, Faith Christian Academy guides students to discover and develop their unique spiritual, mental, creative and physical gifts, so that they may glorify God and serve others through the power of the Holy Spirit. In an atmosphere of grace and truth, we partner with parents and churches, as we empower students to fulfill God's purpose for their lives.

*Id.*

Thus, Faith Bible not only supported Mr. Tucker's ministry as Chaplain but encouraged him when he was planning the Race and Faith Chapel. Unfortunately, the message that was ultimately conveyed by Mr. Tucker and the panelists at the Race and Faith Chapel was not wholly consistent with the religious message that Faith Bible believed should have been conveyed. Instead, the religious message that was actually conveyed was, in some respects, a misrepresentation of Faith Bible's interpretation of Scripture. Ultimately, what Mr. Tucker's

Amended Complaint presents is the manifestation of a disagreement between Faith Bible and Tucker as to how best to interpret and share the Bible's teachings about the great diversity of God's Kingdom and demonstrating grace towards people of all races, backgrounds, and ethnicities.

The First Amendment to the U.S. Constitution makes clear that federal courts cannot become entangled in such religious disputes between a church and its minister. As explained by the United States Supreme Court, "the First Amendment requires dismissal of [a minister's] employment discrimination suit against [his] religious employer." *Hosanna-Tabor Evangelical Lutheran Church v. EEOC*, 565 U.S. 171, 194 (2012). The Tenth Circuit agrees: "The ministerial exception preserves a church's 'essential' right to choose the people who will 'preach its values, teach its message, and interpret its doctrines, both to its own membership and to the world at large,' free from the interference of civil employment laws." *Skrzypczak v. Roman Catholic Diocese of Tulsa*, 611 F.3d 1238, 1243 (10th Cir. 2010) (quoting *Bryce v. Episcopal Church*, 289 F.3d 648, 656 (10th Cir. 2002)). Thus, Mr. Tucker's Title VII claim fails as a matter of law.

In addition, Mr. Tucker's Title VI claim fails because he has not, and cannot, allege that Faith Bible received state or federal funding during the relevant period, or that if it had received such funds that the funds' "primary objective" was for providing employment, which is the key element of any Title VI claim.

As to Mr. Tucker's Third Claim for Relief – a state law wrongful termination claim – that claim is barred as a matter of law under the First Amendment for the same reason Tucker's Title VII is barred. Courts simply cannot adjudicate ecclesiastical disputes. In any event, because Mr. Tucker's federal Title VII and VI claims must be dismissed, this Court should decline to exercise supplemental jurisdiction over his state law tort claim.

Accordingly, this Court should dismiss the entirety of Plaintiff's Amended Complaint

pursuant to Federal Rule of Civil Procedure 12(b)(6).

**2.  FACTUAL BACKGROUND**
   **A.  Mr. Tucker's Role at Faith Bible as Teacher, Dean and Chaplain was to Share Faith Bible's Religious Message**

Mr. Tucker was originally employed as a teacher at Faith Bible in 2000.  Am. Compl. ¶ 29, ECF No. 13.  His employment concluded in 2018.  *Id.* at ¶ 31.  During his tenure, he served in a number of roles, starting with teaching the topics of biology, chemistry and physics.  *Id.* at ¶ 29.  As discussed herein, all teachers at Faith Bible are expected to share the Gospel of Jesus Christ with their students, ministry work that Mr. Tucker embraced from the beginning of his employment at Faith Bible.  In addition, over time Faith Bible promoted him to more prominent ministerial positions in which he was expected to lead the efforts of sharing Faith Bible's religious message in the personal lives of its students.  Mr. Tucker became a "dean" and "chaplain."  *Id.* at ¶¶ 36, 131.  In his role as "dean" and "chaplain," Mr. Tucker planned "chapels, retreats, outreach projects, and student mentoring" as well as "new student assimilation."  *Id.* at ¶ 37.  In fact, one of his job responsibilities was to organize Faith Bible's weekly chapels.  *Id.* at ¶ 39.  Mr. Tucker admitted in his original Complaint that in his role as "Chapel director" he was praised by Faith Bible administration for conducting chapels that challenged Faith Bible students to "tak[e] on hard topics that are important for the kids to pray and wrestle with at this time in their lives."  Compl. ¶ 26, ECF No. 1.

For its part, Faith Bible is a "religious organization."  Am. Compl. ¶ 10; Compl. ¶ 11.  One of its ministries is its operation of a K-12 school.  Am. Compl. ¶¶ 10, 13.  During the 2017-18 academic year, Mr. Tucker's job description at Faith Bible was that of "Chaplain."  Chaplain Employment Agreement §§ 1, 4, attached hereto as **Exhibit 1**.

Faith Bible's Teacher Handbook[1] clearly describes the role of a teacher at Faith Bible to

---

[1] Although Mr. Tucker does not expressly name the Faith Bible Teacher Handbook in his Amended Complaint, he refers to it in two ways.  First, he refers to his employment contract (Am. Compl. ¶ 30) and his employment contract incorporates the Teacher Handbook.  Ex. 1, §

be one of a "minister." Teacher Handbook, attached hereto as **Exhibit 2**. Specifically, the Teacher Handbook describes the role of a "teacher" as follows:

> <u>To become a teacher</u> or full-time worker at Faith Christian Academy <u>is a calling</u> from the Lord Jesus Christ <u>to minister</u>. <u>You are joining this ministry, not as an employee, but as a minister to FCA students and families</u>.
>
> FCA's ministry focus emphasizes the following items:
>
> 1. FCA desires to provide an academic program that is based on the <u>scriptural principles found in the Word of God, the Holy Bible</u>. <u>FCA teachers are committed to the integration of biblical truth within each academic and extra-curricular discipline</u>. Additionally, <u>teachers are responsible to facilitate godly character development</u>, teach good study habits and encourage academic excellence. ….
>
> 2. Although <u>FCA is a Christian academic institution</u>, an <u>additional emphasis is placed upon the spiritual life of all students</u>. FCA's desire is to train and lead students into attitudes and habits, <u>which will bring them to Christ-like maturity</u>. This includes encouraging all students to develop a prayer life, a passion to share to Gospel message, and characteristics such as honesty, humility, purity, faithfulness, love, and service. For students who may not yet be born again, or are new believers in Christ, <u>all staff members will pray, teach, and set an example, seeking opportunities and the empowering of the Holy Spirit to lead them to experience an abiding relationship with Christ</u>.

Exhibit 2, Teacher Handbook, p. 8 (emphasis added). The Teacher Handbook further explains the role of a Faith Bible teacher: "Therefore, the educational process of FCA strives to develop proper personal relationships with Jesus Christ. <u>Teaching becomes a ministry</u>, and <u>must be led by the Holy Spirit</u> for only He can grant this success." *Id.* (emphasis added).

In his Chaplain Employment Agreement, Mr. Tucker acknowledged that he had the "gift" to be Chaplain and that "God has called him/her to minister this gift at FCA." Ex. 1, at 1. The

---

V.5. Second, he refers to the Teacher Handbook when he references the policies adopted by Faith Bible that bind teachers. Am. Compl. ¶ 144. Accordingly, this Court may consider the Teacher Handbook when evaluating this Motion to Dismiss. *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

Teacher Handbook describes Faith Bible's weekly chapel meetings as follows: "Chapel is a time for staff and students alike to hear from the Lord and to draw together spiritually."  Ex. 2, at 37.

### B. The Race and Faith Chapel and the Subsequent Fallout are the Central Events that Give Rise to Mr. Tucker's Claims

The central event in Mr. Tucker's Amended Complaint is a chapel service that he, as Chaplain, organized on January 12, 2018, which focused on issues of race and faith.  Am. Compl. ¶¶ 64–117.  As he acknowledges in his February 6, 2018 letter that he sent to students, parents, and teachers, he created the program for the Race and Faith Chapel to help Faith Bible students integrate the Bible's message of diversity into their lives and community interactions at their school.  Specifically, as Tucker said in relation to why he programmed the Race and Faith Chapel: "The Bible repeatedly explains the kingdom of God as made up of a diverse group of people from every tribe, language, people, and nation (Rev. 9, John 11). My prayer was that this [the Race and Faith Chapel] would be a step toward recognizing and appreciating this beautiful picture."  February 6, 2018 Letter from Tucker to "Friends in the Faith Christian community" attached hereto as **Exhibit 3**; Am. Compl. ¶ 106.

Mr. Tucker's three causes of action in his Amended Complaint all allege that Faith Bible retaliated against him, as Chaplain, "for a supposedly flawed message" he conveyed at the Race and Faith Chapel and the ensuing internal conflict within the Faith Bible community.  Am. Compl. ¶¶ 80–92, 97, 103, 109, 117 ("In the February 26, 2018 meeting, Hasz openly admitted that Mr. Tucker was being fired for his role in organizing the Race and Faith Chapel and because of parent backlash to the event."), 128.

### 3. LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]o withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1190

(10th Cir. 2012) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, claims must be plausible and not merely conceivable to survive a motion to dismiss. *Id.*

While generally a Rule 12(b)(6) motion looks only to the sufficiency of the factual allegations in the plaintiff's pleadings alone, "if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss. *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). Defendant has attached to this Motion three documents that are referenced in Tucker's Amended Complaint and which are central to his claims. Exhibit 1 is Tucker's Chaplain Employment Agreement. Tucker refers to his Chaplain Employment Agreement in his Amended Complaint and Faith Bible's decision to not renew his contract is central to his claims. Am. Compl. ¶¶ 30, 111, 112, 131. Exhibit 2 is the Faith Bible Teacher Handbook. Tucker refers to the Teacher Handbook in his Amended Complaint as explained in footnote 2 *supra*. Moreover, the "policies" in the Teacher Handbook are central to Tucker's wrongful termination claim. Am. Compl. ¶ 144. Exhibit 3 is the February 6, 2018 letter that Tucker sent to the Faith Bible community to explain the Race and Faith Chapel and forms a factual basis for his retaliation claims under Title VII and wrongful termination claims. Am. Compl. ¶ 106.

**4.     ARGUMENT**

   **A.     Tucker's Title VII Claim Must be Dismissed with Prejudice**

Tucker served as a "minister" and therefore his Title VII claim against Faith Bible is barred as a matter of law. The Tenth Circuit has recognized that the First Amendment bars any employment discrimination claim under Title VII by a "minister" against his or her religious organization employer. *Skrzypczak*, 611 F.3d at 1243, 1246.

"Although the doctrine usually comes into play in employment suits between an ordained

minister and her church, it extends to any employee who serves in a position that 'is important to the spiritual and pastoral mission of the church.'" *Id.* at 1243.  In 2012, the Supreme Court confirmed that the "ministerial exception," which is rooted in the First Amendment, is an affirmative defense to a Title VII claim.  *Hosanna-Tabor*, 565 U.S. at 195.  "The purpose of the [ministerial] exception is not to safeguard a church's decision to fire a minister only when it is made for a religious reason.  The exception instead ensures that the authority to select and control who will minister to the faithful—a matter 'strictly ecclesiastical,'—is the church's alone, free from government interference and employment laws." *Id.* at 188-89, 194-95.

The "ministerial" exception applies to all employees of a religious organization who are "important to the spiritual and pastoral mission of the church."  *Skrzypczak*, 611 F.3d at 1243; *see Hosanna-Tabor*, 565 U.S. at 199 (Alito, J., concurring) (stating that the "ministerial exception" should apply to any employee who "serves as a messenger or teacher of its faith"). The Tenth Circuit and the Supreme Court have extended the "ministerial exception" to employees who were academic teachers at schools administered by religious organizations, even when those teachers' job responsibilities included a small percentage of religious teachings in relation to their responsibilities to teach secular subjects.  *See Skrzypczak*, 611 F.3d at 1240-41; *Hosanna-Tabor*, 565 U.S. at 190-94.

Here, Tucker's Title VII claim is barred by the First Amendment to the U.S. Constitution.  As explained above, Faith Bible is a religious organization.  Tucker's role as Chaplain and teacher required him to teach and share Faith Bible's religious message to Faith Bible's students.  This is made clear in his own admissions, the terms of his Chaplain Employment Agreement, and the Teacher Handbook.  *See supra*, pp. 4-6.  Thus, he was unequivocally a "minister" under *Hosanna-Tabor* and *Skrzypczak*.  Moreover, his claims, by his own admission, all arise out of the fallout from the religious message that he conveyed at the Race and Faith Chapel that he programmed and organized as Chaplain.

Tucker's Title VII claim arises from his grievances that the Faith Bible administration "banned him from speaking in front of students at Chapel," and that they were "blam[ing] Tucker for the supposedly <u>flawed message</u> and announcing that Plaintiff's role in the Race and Faith Chapel would be investigated." Am. Compl. ¶ 80 (emphasis added); *see also* Compl. ¶¶ 29, 33.

Based on his allegations in his Amended Complaint, together with the ministerial role that Faith Bible ascribes to the position of teacher and Chaplain, it cannot reasonably be disputed that Mr. Tucker was a "minister" as contemplated by the Tenth Circuit and Supreme Court. Again, for purposes of the ministerial exception to Title VII claims, a "minister" is any employee of the religious organization that "is important to the spiritual and pastoral mission of the church." *Skrzypczak*, 611 F.3d at p. 1243; *see also Conlon v. InterVarsity Christian Fellowship*, 777 F.3d 829 834-35 (6th Cir. 2015) (helping others cultivate "intimacy with God and growth in [a] Christ-like character . . . " a ministerial function). The Tenth Circuit has also described "ministers" as "the people who will preach [the religious organization's] values, teach its message, and interpret its doctrines, both to its own membership and to the world at large." *Id*. *see also Fratello v. Archdiocese of New York*, 863 F.3d 190, 209 (2nd Cir. 2017) (holding a school principal a "minister" due to her conveying the school's Catholic message and carrying out its mission). The Faith Bible Teacher Handbook makes it absolutely clear that as a teacher and chaplain, Tucker was important to the spiritual and pastoral mission of Faith Bible and was certainly a messenger and teacher of Faith Bible's faith and spiritual beliefs. Most pertinent, the central basis of his claims arise from the Race and Faith Chapel, a weekly religious "symposium" (Am. Compl. ¶¶ 2–3) that <u>he</u> programmed and organized for the very purpose of sharing what he believed was the Bible's religious message as it pertained to issues of racial diversity and inclusion. Exhibit 3.

As such, Tucker's Title VII claims are barred as a matter of law by the First Amendment to the U.S. Constitution and must be dismissed as such. *Skrzypczak*, 611 F.3d at 1246; *Hosanna-*

*Tabor*, 565 U.S. at 188–89, 194–95.

        **B.**     <u>**Tucker Has Failed to Allege a Claim Under Title VI**</u>

        Tucker's Second Claim for Relief seeks damages pursuant to 42 U.S.C. § 2000d, also known as Title VI. This claim also fails as a matter of law. "Title VI prohibits discrimination on the basis of race, color, or national origin in any program or activity receiving federal financial assistance." 42 U.S.C. § 2000d. That prohibition extends to discrimination in employment by programs or activities that receive federal funding; however, covered entities can only be sued for employment discrimination 'where a primary objective of the Federal financial assistance [to that program or activity] is to provide employment.'" *Reynolds v. Sch. Dist. No. 1, Denver, Colo.*, 69 F.3d 1523, 1531 (10th Cir. 1995) (quoting 42 U.S.C. § 2000d–3) (brackets in original). Thus, to succeed on a Title VI claim, the pleader must allege that a primary objective of federal financial assistance is to provide employment. 42 U.S.C. § 2000d-3; *Reynolds*, 69 F.3d at 1531-32. Tucker's allegations in his Amended Complaint regarding his Title VI claim are fatally deficient. First, he asserts that Faith Bible is subject to Title VI liability because Faith Bible "on information and belief, receives federal support in the form of financial assistance, scholarship grants and subsidies, and tax exemptions." Am. Compl. ¶ 136. However, this allegation is insufficient to trigger liability for Faith Bible under Title VI because Mr. Tucker has failed to allege that whatever federal financial assistance Faith Bible received had a "primary objective" of providing employment. *Reynolds*, 69 F.3d at 1531-32. As such, this Court must dismiss Tucker's Second Claim for Relief. *See Gilmore v. Univ. of Rochester*, 410 F. Supp. 2d 127, 132 (W.D.N.Y. 2006) (dismissing Title VI claim where complaint alleged only that defendant received federal funds, not that the funds were primarily intended to provide employment).

        Moreover, there is no good faith basis in fact for Mr. Tucker to amend his pleading (again) to cure this defect and still comply with his FRCP 11 obligations. Faith Bible did not receive any federal financial assistance during any relevant time period, let alone federal financial

assistance with a primary objective of providing employment. Thus, Tucker should not be given leave to amend unless he provides an affidavit setting forth on personal knowledge what facts exist to support any such amendment. In this regard, Tucker's "information and belief" betrays his lack of any factual basis to even assert a Title VI claim and highlights that Tucker has not, and cannot sufficiently plead a Title VI claim. In similar Title VI cases where the plaintiff's allegations were merely that upon "information and belief" the defendant/employer received some sort of federal financial assistance, courts have dismissed such complaints for stating only conclusions of law without any specific facts to make the Title VI plausible. See *Moore v. City of New York*, No. 15CV6600GBDJLC, 2017 WL 35450, at *15 (S.D.N.Y. Jan. 3, 2017).

### C. The Plaintiff's Wrongful Termination Claim Must be Dismissed

#### (1) Tucker's Wrongful Termination Claim Fails as a Matter of Law for the Same First Amendment Reasons that Plaintiff's Title VII Claim Fails

Tucker's Third Claim for Relief is a state law wrongful termination cause of action. Am. Compl. ¶¶ 141–51. His wrongful termination claim arises from the same operative facts as his Title VII claim. *Id*. That is, Tucker's wrongful termination claim arises from the same alleged ministerial controversy and disagreement between him and Faith Bible regarding the "flawed message" conveyed at the Race and Faith Chapel and the Faith Bible administrators' handling of the alleged fallout within its congregation (i.e., students, parents, teachers). Am. Compl. ¶¶ 80–92, 97, 103, 109, 117.

Under Colorado law, employment tort claims by ministers against their religious organization are barred by the First Amendment to the U.S. Constitution for the very same reasons that the "ministerial exception" to Title VII claims exists under federal law. *Seefried v. Hummel*, 148 P.3d 184, 188-91 (Colo. App. 2005) ("The Colorado Supreme Court has recognized that courts have no authority to determine claims which directly concern a church's choice of minister."). Although the Colorado Court of Appeals bars such claims under a theory

of subject matter jurisdiction[2] whereas the federal courts bar the claim under a "failure to state a claim" standard,[3] the legal principle is the same: the First Amendment bars the government from interfering or even chilling a religious organization's right to select and employ the ministers that it believes best fit to convey its religious message. *Skrzypczak*, 611 F.3d at 1245-46; *Seefried*, 148 P.3d at 189-91; *Van Osdol v. Vogt*, 908 P.2d 1122, 1127-28 (Colo. 1996).

       The Colorado Supreme Court first announced the rule in Colorado in connection with a wrongful termination case brought by a female pastor against her church for terminating her after she complained that a senior pastor had sexually abused her and sexually harassed parishioners. *Van Osdol*, 908 P.2d at 1124-25. The Colorado Supreme Court reasoned that "'[t]he minister is the chief instrument by which the church seeks to fulfill its purpose.' Because of the minister's unique role in the church, the appointment of a minister is inherently of prime ecclesiastical concern." *Id*. at 1128. As a result, the Colorado Supreme Court held that "the mere maintenance of a suit concerning matters related to a pastoral appointment violates free exercise protection." *Id.* The Colorado Supreme Court therefore concluded that under the First Amendment, "the choice of a minister is protected from review by secular courts." *Id.* The Colorado Supreme Court accordingly affirmed the dismissal of the female pastor's Title VII and related tort claims.

       Nine years later, the Colorado Court of Appeals in *Seefried* applied the rule in *Van Osdol* as well as a significant body of case law from across the nation, to the defamation context. Discussing the reasoning of the existing case law prohibiting defamation claims by ministers against their religious organization, the *Seefried* court determined that "[w]hen a defamation claim arises entirely out of a church's relationship with its pastor, the claim is almost always deemed to be beyond the reach of civil courts because resolution of the claim would require an impermissible inquiry into the church's bases for its action." *Seefried*, 148 P.3d at 189. "[I]n

---

[2] *Seefried*, 148 P.3d at 188-89.
[3] *Skrzypczak*, 611 F.3d at 1241-42.

most defamation cases, 'the alleged defamatory statements did not overtly express any religious principles or beliefs, but all the actions resulted from conflicts 'confined within' the churches involved.'" *Id.* at 189–90 (internal citations and quotations omitted).

The *Seefried* court went on to discuss that where "the alleged defamatory statements would require an examination of the church's reasons for dismissal of the plaintiff as pastor . . . 'it [is] impossible to consider the plaintiffs' allegations of defamation 'in isolation, separate and apart from the church[s] decision to terminate [the plaintiffs] employment.'" *Id*. at 190 (internal citations and quotations omitted) (latter two brackets in original).  Therefore, under *Seefried*, where the actions giving rise to the alleged tort claim stem from "conflicts confined within the churches," the tort claims cannot be viewed in "isolation, separate and apart from the church's decision to terminate" and as such the First Amendment bars such tort claims as a matter of law. *Id*.  Although *Seefried* involved a defamation claim, the *Seefried* court made clear that the First Amendment principles that barred defamation claims also barred other torts claims arising out of the employment relationship.  *Id*. at 189–90.

Here, Tucker's wrongful termination claim is inextricably intertwined with the Race and Faith Chapel and the internal fallout within the Faith Bible community that ensued.  He admits in his Amended Complaint he was wrongfully terminated because of the internal conflict within Faith Bible as to the "flawed message" that he helped convey at the Race and Faith Chapel as well as the negative response from the Faith Bible students, parents and teachers to the Race and Faith Chapel.  Am. Compl. ¶¶ 80–92, 97, 103, 109, 117.  As such, under *Seefried*, Mr. Tucker's wrongful termination defamation claim is barred by the First Amendment and must be dismissed.

### (2) The Court Should Decline Supplemental Jurisdiction Over the Wrongful Termination Claim

Even if this Court does not dismiss Tucker's wrongful termination claim as being barred by the First Amendment, this Court should nevertheless decline to exercise supplemental

jurisdiction over this state law claim. Tucker alleges that this Court has original jurisdiction based on federal question jurisdiction vested in this Court by virtue of 28 U.S.C. §§ 1331 and 1343. Am. Compl. ¶¶ 5–7. His Third Claim for Relief is a state law wrongful termination cause of action. Am. Compl.¶¶ 141–51. Tucker alleges that this Court has supplemental jurisdiction over this claim by virtue of 28 U.S.C. § 1367. Am. Compl. ¶ 7. Because this Court must dismiss the Title VI and Title VII claims, it should also decline to entertain supplemental jurisdiction over the wrongful termination claim.

"The district courts may decline to exercise supplemental jurisdiction over a claim under [28 U.S.C. § 1367(a)] if-- . . . (3) the district court has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(3). "In considering whether to exercise supplemental jurisdiction, a court should balance the factors of judicial economy, convenience, fairness and comity. These factors, however, will usually—as they do here— 'point toward declining to exercise jurisdiction over the remaining state-law claims' when all the federal law claims are eliminated before trial.'" *Odom v. Columbia Univ.*, 906 F. Supp. 188, 197 (S.D.N.Y. 1995) (internal citations omitted) (*citing United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); *Sportsmans Warehouse, Inc. v. Fair*, 576 F. Supp. 2d 1175, 1186–87 (D. Colo. 2008) (dismissing remaining state law defamation claim against employer under 28 U.S.C. § 1367(c)(3) after dismissing all federal claims).

Because Tucker's federal Title VII and Title VI must be dismissed, this Court should decline to exercise supplemental jurisdiction over his remaining state law wrongful termination and accordingly dismiss this Third Claim for Relief.

**5.    CONCLUSION**

This Court should dismiss Tucker's Complaint under Rule 12(b)(6). Specifically, this Court must dismiss his First and Third Claims for Relief because those claims are barred as a matter of law under the First Amendment to the Unites States Constitution. Tucker's Second

Claim for Relief should be dismissed with prejudice because he has not alleged that any federal funds that FCA received were primarily for employment purposes or had any nexus to the conduct of which he complains.  Finally, in the event the Court does not dismiss Tucker's Third Claim for Relief under the First Amendment, because his First and Second Claims for relief are the only alleged basis for this Court's original jurisdiction, and because those Claims must be dismissed with prejudice, this Court should decline to exert supplemental jurisdiction over Tucker's wrongful termination cause of action.

DATED this 14th day of October 2019.          Respectfully submitted,

                                                    HATCH RAY OLSEN CONANT LLC

                                                    By:     */s/Robert W. Hatch, II*

                                                    730 17th Street, Suite 200
                                                    Denver, Colorado 80202
                                                    (303) 298-1800

## CERTIFICATE OF MAILING

I hereby certify that on this 14th day of October 2019, a true and correct copy of the foregoing **MOTION TO DISMISS** was served via ECF on all parties appearing on record.

*/s/ Laura R. Satterfield*
Laura R. Satterfield, Paralegal