IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 19-cv-01652-RBJ

GREGORY TUCKER,

    Plaintiff,

v.

FAITH BIBLE CHAPEL INTERNATIONAL d/b/a Faith Christian Academy Inc.,

    Defendant.

---

ORDER on MOTION FOR SUMMARY JUDGMENT

---

    Gregory Tucker was for many years a science teacher at Faith Christian Academy in Arvada, Colorado.  In 2014 he was given additional responsibilities as either Director of Student Life or Chaplain (disputed) at the school.  He was fired on February 26, 2019, after some parents, students and ultimately administrators objected to a "chapel" he organized and held a month earlier.  Mr. Tucker then brought this action under Titles VI and VII of the Civil Rights Act of 1964 and Colorado common law, claiming that he was terminated in retaliation for opposing racial harassment at the school.[1]  The defendant moved to dismiss the complaint, claiming that the "ministerial exception" bars the suit.  As discussed herein, the ministerial exception precludes the application of anti-discrimination laws to employment decisions made by religious organization with respect to their own ministers.

---

[1] Plaintiff does not oppose dismissal of his Title VI claim.

At plaintiff's request, and because the motion was supported by three attached exhibits, the Court elected to convert the motion to dismiss to a motion for summary judgment. *See* ECF No. 32. The Court has considered the parties' briefs and now grants the motion in part and denies it in part.

## FACTS

The following is not intended to be a comprehensive statement of all the evidence presented with the parties' briefs, but it is enough for purposes of this order.

### A. **Defendant's Evidence.**

Defendant's motion and exhibits include the following admissible evidence:

1. The primary purpose for which the defendant, Faith Bible Chapel International, was formed was "to propagate the Gospel of our Lord and Saviour Jesus Christ among all people who are susceptible to the Gospel by recruiting, educating, and supporting Christian workers throughout the United States and in foreign countries; to preach, teach, witness, and disseminate the Gospel according to Holy Writ on a non-sectarian, and interdenominational basis; to establish, support, maintain, and conduct schools, conferences, and assemblies for worship, religious, educational, and charitable work. … Notwithstanding anything herein set forth, the corporation shall not engage in any activities which are not directly in furtherance of it primary religious, educational, and charitable purposes." ECF No. 41-1 (Articles of Incorporation) at 1, §II.

2. Faith Bible Chapel International operates the Faith Christian Academy. The "vision statement" of the Faith Christian Academy, according to its 2017-2018 Teacher Handbook, was "inspiring and equipping students with an excellent education, as they use their

unique gifts to passionately represent Christ." ECF No. 25-2 at 6. It's "mission statement" was "By providing a biblically integrated education, Faith Christian Academy … guides students to discover and develop their unique spiritual, mental, creative and physical gifts, so that they may glorify God and serve others through the power of the Holy Spirit. In an atmosphere of grace and truth, we partner with parents and churches, as we empower students to fulfill God's purpose for their lives." *Id.*

3. For many years Gregory Tucker was employed as a teacher at Faith Christian Academy. He received additional responsibilities as Chaplain beginning in 2014.

4. On February 16, 2017 Faith Christian Academy and Mr. Tucker entered into an Extension Agreement, extending his employment as "Chaplain" for the August 6, 2017 to August 4, 2018 school year. ECF No. 25-1. The agreement states, among other things: "The Superintendent of Faith Christian Academy or his designee ('Superintendent') discussed with Employee the necessity that the hand of the Lord be on Employee and that he/she exhibits the gift necessary to perform in the position of Chaplain. Employee expressed his/her belief that he/she has this gift and that God has called him/her to minister this gift at FCA." *Id.* at 1, §II. It notes that "Employee is currently assigned to a/an **Chaplain** position." *Id.,* §IV (emphasis in original).

5. The Extension Agreement also states that the employee is required to attend faculty prayer sessions; to attend "a Christian, Bible believing church regularly;" and to "abide by and be subject to the scriptural and other principles and policies stated in the FBCI/FCA handbooks." *Id.* at 1-2, §V, ¶¶2, 4 and 5.

3

6. The Faith Christian Academy Teacher Handbook in effect for the 2017-2018 school year states:

> To become a teacher or full time worker at Faith Christian Academy is a calling from the Lord Jesus Christ to minister.  You are joining this ministry, not as an employee, but as a minister to FCA students and families.  FCA's ministry focus emphasizes the following items:
>
> 1. FCA desires to provide an academic program that is based on the scriptural principles found in the Word of God, the Holy Bible.  FCA teachers are committed to the integration of biblical truth within each academic and extra-curricular discipline.  Additionally, teachers are responsible to facilitate godly character development, teach good study habits and encourage academic excellence.  Each teacher must be thoroughly prepared and use effective instructional methods and techniques.
>
> 2. Although FCA is a Christian academic institution, an additional emphasis is placed upon the spiritual life of all students.  FCA's desire is to train and lead students into attitudes and habits, which will bring them to Christ-like maturity. This includes encouraging all students to develop a prayer life, a passion to share to Gospel message, and characteristics such as honesty, humility, purity, faithfulness, love, and service.  For students who may not yet be born again, or are new believers in Christ, all staff members will pray, teach, and set an example, seeking opportunities and the empowering of the Holy Spirit to lead them to experience an abiding relationship with Christ.
>
> 3. All staff members must be aware of the importance of our ministry to one another. Each teacher needs to be open to the Holy Spirit to offer words of encouragement, prayer, and concern for one another.  It is important that teachers be willing to work as a team, make and receive positive suggestions, stand, as much as possible, with fellow teachers (especially in times of hardship), and guard the reputation of others.  Trusting in the Lord in areas of personal needs as well as school needs and looking to Him as the primary source of wisdom, help, knowledge, and strength is critical.

ECF No. 25-2 at 8.

7. As Chaplain Mr. Tucker organized a chapel service referred to by him as the "Race and Faith Chapel."  The chapel was held on January 12, 2018.

8. The chapel was not well received by some students and parents.

9. In a letter to students, parents, and teachers dated February 6, 2018, Mr. Tucker stated, "The Bible repeatedly explains the kingdom of God as made up of a diverse group of people from every tribe, language, people, and nation (Rev. 9, John 11). My prayer was that this [Race and Faith Chapel] would be a step toward recognizing and appreciating this beautiful picture." *Id.* at 2.

10. During his deposition Mr. Tucker acknowledged that he had a minor degree in Religious Studies, which required that he take religious classes, and that when he applied for a position at FCA, he indicated that he would be comfortable teaching certain Bible classes, but not others. *Id.* (Depo. At 10: 2-10; 49:1-4; 50:20-22).

11. Mr. Tucker was also asked at his deposition. "And so you were holding yourself out to the students as being the Director of Student Life and also Chaplain, correct?" He answered, "Yes." ECF No. 46-4 (Depo. at 77:10–13).

12. In an introductory PowerPoint that Mr. Tucker presented to his classes in 2017, he described his position for class periods 1-4 as "Director of Student Life/Chaplain," with job duties including to "focus on the physical, relational, and spiritual wellbeing of students" and to plan "chapels, retreats, outreach projects, and student mentoring opportunities that are designed to create opportunities for student spiritual growth." ECF No. 46-2 at 3. For periods 5-7 his duties were to teach Sophomore/Senior Bible leadership and Junior Bible Worldview and Apologetics. *Id.*

### B. **Plaintiff's Evidence**.

Plaintiff's evidence can be divided into two groups: evidence suggesting that defendant is not a religious organization, and evidence that Mr. Tucker's positions did not qualify for the ministerial exception.

Religious organization.

1.      Faith Bible Chapel International is a non-profit corporation governed by a Board of Directors that oversees all its enterprises. ECF No. 41-1 at 1 (Articles of Incorporation) and 41-2 and 3 (Bylaws).

2.      The Bylaws do not set forth ecclesiastical policies, regulations, or standards, nor do they grant the Board the power to ordain or otherwise commission clergy. *Id.* (Bylaws).

3.      Its business operations include the Faith Christian Academy but also a publication operation, a coffee shop, a church, an American Girls Heritage troop, and others, each carried out as a distinct enterprise operating under its own tradename. ECF No. 41-4 at 2 (Colorado Secretary of State business listing).

4.      The school is managed by a superintendent, and the church is managed by a Senior Pastor, both of whom report to the Board, but neither of whom reports to the other. Deposition of Andrew Hasz, ECF No. 41-5 at 50:20-53:9; Deposition of Douglas Newcomb, ECF No. 41-6 at 9:14-10:6.

5.      Spiritual affairs of the church are also managed by a group of elders (although members of the Board must also be elders). ECF No. 41-3 (Elder Guidelines) at 1-2.

Mr. Tucker's Positions.

6.      Gregory Tucker was a teacher at Faith Christian Academy from August 2000 to July 2006 and from August 2010 to February 2018. Declaration of Gregory Tucker, ECF No. 41-7 at ¶2. He also was Director of Student Life beginning in August 2014. In approximately January 2018 he was demoted from the position of Director of Student Life and was stripped of

6

the responsibility of organizing weekly chapel meetings. *Id.* at ¶31. When his employment was terminated by Faith Christian Academy in February 2018 his only position was that of teacher. *Id.*

7. Mr. Tucker understood that there was an entity "somewhat related" to the Faith Christian Academy called Faith Church that was led by ordained pastors, but the pastors were not his supervisors, and he rarely, if ever, interacted with them. *Id.* at ¶4.

8. Mr. Tucker was hired to teach biology, physics and chemistry, and he did so throughout his tenure at Faith Christian Academy. He relied on the same textbooks that were used in public schools. There was no theology, nor was there any "distinct or unique Christian principle that I was required to teach in conjunction with the secular content of these subjects." *Id.* at ¶6.

9. He also taught classes in "Leadership" and "Worldviews and World Religions," but although he taught that Christianity represented a credible worldview, he was required "to avoid the advancement of one Christian perspective over another because there were many Christian perspectives, as well as non-Christian perspectives, represented in the school." *Id.* at ¶7.

10. He "did not have any specific training in the Bible and therefore was not qualified to teach any classes that involved instruction regarding the Bible or theology. Teachers who did teach classes regarding the Bible and theology typically had specific training or education in that field, like a seminary education or ordination." *Id.* at ¶8.

11. Most of his students were not members of the Faith Church. Doctrinal and theological perspectives among students and teachers varied and included conservative

evangelical, liberal evangelical, Lutheran, Catholic, Baptist, Presbyterian, and Mormon; and there were students who had non-Christian views including Buddhism, Hinduism, and atheism. Most teachers attended churches other than Faith Church and were affiliated with different Christian denominations that often held theological beliefs quite different from those promoted by Faith Church.  *Id.* at ¶¶9-11.

12.     He was instructed to integrate a Christian worldview in his teachings but was not provided any training, instruction or literature as to what that worldview should be, other than Bible-oriented.  He was never required to teach a class in religious doctrine or to set aside time in his classes specifically dedicated to a religious message.  He was told not to preach but to encourage students to think through their own perceived versions of Christianity and to consult their parents about specific theological matters.  He was expected to "endorse Christianity in general terms, set a good moral example, and allow a Christian worldview to influence [his] teaching," but he was "encouraged to avoid delivering messages on church doctrine or theology."  *Id.* at ¶¶14-15, 18.

13.     In August 2014 he was promoted and assumed duties in addition to teaching.  He still was informally referred to as teacher, but his formal title most commonly was Director of Student Life.  His contract and extensions referred to the position as "Chaplain," but other than in those documents he was never referred to as Chaplain by students, teachers or administrators. He was asked whether he preferred the title of Director of Student Life, Dean of Student Life, or Chaplain, and he chose Director of Student Life because that title had no religious connotation. His email signature, business cards, and updated job description all used that title.  He believes

that the use of the title "Chaplain" would have been "disingenuous" because he was not an ordained clergy member. *Id.* at ¶¶21-22.

14. As Director of Student Life he helped students find service and mentoring opportunities; supported parents who had questions about their child's growth and achievements; met with students concerning discipline issues; and promoted a positive student environment. He counseled students concerning behavior but did not counsel or discipline students concerning theological principles or principles of faith expressed by Faith Church. *Id.* at ¶24.

15. In his last year he was responsible for organizing weekly "Chapel Meetings." These were "assemblies or symposiums where people who held a variety of religious perspectives (or sometimes non-religious perspectives) would speak on matters of interest to the school." *Id.* at ¶¶25-26. These meetings would also include announcements, awards, rallies, student election speeches, and other ordinary high school-related matters. *Id.* The school administration explicitly communicated that these meetings were not regarded as church. *Id.* at ¶27.

16. Mr. Walker has never heard superintendents, principals, teachers, administrative staff, students, parents, or anyone else refer to teachers or the Director of Student Life as "ministers." He is aware from documents produced in this litigation that Faith Bible Chapel International describes itself as a collection of ministries, but he is unaware of any instance when the Faith Cristian Academy was ever held out to the public as a ministry of Faith Church, nor has he ever heard anyone refer to the school that way internally. *Id.* at ¶29-30.

17. He once heard that there was a tax deduction available to ministers to assist with housing costs and asked the then-Superintendent whether he qualified, but he was told that he did not qualify because he was not a minister. *Id.* at ¶29.

## STANDARD OF REVIEW

The Court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. A fact is material "if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The Court will examine the factual record and make reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Concrete Works of Colo., Inc. v. City and Cty. of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

## ANALYSIS AND CONCLUSIONS

The First Amendment's Establishment and Free Exercise clauses "bar the government from interfering with the decisions of a religious group to fire one of its own ministers." *Hosanna-Tabor Evangelical Lutheran Church and School v. Equal Employment Opportunity Commission,* 565 U.S. 171, 181 (2012). In *Hosanna-Tabor* the Court applied this "ministerial exception" to a suit alleging discrimination in employment for the first time. *Id.* at 188. A

"called" teacher who taught kindergarten and fourth grade in an elementary school operated by a congregation of the Lutheran Church developed narcolepsy and ultimately was fired. She claimed that she was terminated in violation of the Americans with Disabilities Act. The district court granted summary judgment dismissing her claim under the "ministerial exception." The Sixth Circuit reversed, emphasizing that she taught the same classes as "lay" teachers in the school. The Supreme Court reversed the court of appeals and upheld the dismissal.

Significantly, the Court made it clear that it was not adopting "a rigid formula for deciding when an employee qualifies as a minister." *Id.* at 190. Rather, the Court identified four circumstances that collectively contributed to its decision in that specific case: (1) the school held the teacher out as a minister, (2) her title as a minister "reflected a significant degree of religious training followed by a formal process of commissioning;" (3) the teacher held herself out as a minister in several ways, i.e., "by accepting the formal call to service, according to its terms," and claiming a special housing tax allowance available only to ministers, and proclaiming that she felt that God was leading her to serve in the "teaching ministry;" and (4) her job duties "reflected a role in conveying the Church's message and carrying out its mission." *Id.* at 191-92.

The Court further identified three errors in the analysis of the Sixth Circuit: it assigned no relevance to the fact that the teacher was a commissioned minister; it assigned too much weight to the fact that the teacher taught the same courses as lay teachers; and it placed too much emphasis on the relative portion of the teacher's day spent teaching secular subjects. *Id.* at 192-94.

In the present case I am inclined to agree with defendant's argument that it (and in particular the Faith Christian Academy that is the focus of this case) qualifies as a religious group or organization. However, I find that whether Mr. Tucker was a "minister" within the meaning of the "ministerial" exception" is genuinely disputed on the evidence presented. Defendant's position is substantially grounded in the wording of documents, most notably the extension agreement that characterized Mr. Tucker as "chaplain" and the handbook which purports to make all teachers and other full-time employees "ministers." To be sure, those documents are relevant to the issue. But the substance of Mr. Tucker's position turns on the totality of the facts and circumstances of his employment, and he has come forward with facts that, if believed by the jury, could rationally support the opposite conclusion.

Two Ninth Circuit cases involving, as did *Hosanna-Tabor,* the application of the ministerial exception to schoolteachers are presently before the Supreme Court: *Biel v. St. James School,* 911 F.3d 603 (9th Cir. 2018), and *Morrissey-Berru v. Our Lady of Guadalupe School,* 769 F. App'x 460 (9th Cir. April 30, 2019) (unpublished). I am informed that the cases were argued on May 11, 2020. The Court's resolution of those cases may well further explain and define the ministerial exception in the schoolteacher context. However, this case is close to a year old and has not yet proceeded even to the Scheduling Conference stage. Convinced as I am that there is a genuine dispute of material fact as to whether Mr. Tucker was a "minister," both before and after his demotion in January 2018, I find no compelling reason to further delay the resolution of the pending motion.

Finally, I acknowledge defendant's heavy emphasis on the Tenth Circuit's decision in *Skrzypzpac v. Roman Catholic Diocese of Tulsa,* 611 F.3d 1238 (10th Cir. 2010), and in

particular, its statement that the minister exception "extends to any employee who serves in a position that 'is important to the spiritual and pastoral mission of the church.'" *Id.* at 1243 (quoting *Rayburn v. Gen. Conference of Seventh–Day Adventists,* 772 F.2d 1164, 1169 (4th Cir.1985)). In that case the court, affirming the district court's grant of summary judgment, examined the facts and circumstances of the plaintiff's employment. The examination of the facts was hampered by plaintiff's failure to provide a personal affidavit explaining her job duties and functions. Based on the defendant's evidence the court agreed with the district court that her position, though including some administrative responsibilities, "furthered the core of the spiritual mission of the Diocese." *Id.*

Summary disposition, whether in *Skrzypzpac,* or the court's earlier decision in *Bryce v. Episcopal Church in the Diocese of Colorado,* 289 F.3d 648 (10th Cir. 2002), or the Supreme Court's later holding in *Hosanna-Tabor,* turns on whether the facts and circumstances presented raise a genuine dispute of material fact. Because I have found that the facts and circumstances in the record of this case do show that there are genuine disputes of material fact, I am satisfied that summary disposition of this case is inappropriate under the standards set in all these cases.

## ORDER

1. Defendant's motion to dismiss, converted by the Court to a motion for summary judgment [ECF No. 25], is GRANTED IN PART AND DENIED IN PART. It is granted to the extent that the Court dismisses plaintiff's Second Claim which was brought under 42 U.S.C. § 2000d (Title VI). The motion is otherwise denied.

2. The parties are directed to contact Chambers by email within 14 days to set a Scheduling Conference and to submit a proposed Scheduling Order. Depending on whether and,

if so, what restrictions related to the coronavirus pandemic are still in place, the Court will either schedule an in-person Scheduling Conference, or conduct the conference by video teleconference, or simply review and modify, if necessary, the parties' proposed order.

DATED this 18th day of May, 2020.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge